1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT FOR THE

8                           EASTERN DISTRICT OF CALIFORNIA

9
   WILLIAM SKELTON,                    )        1:06-cv-01503 AWI GSA
10                                      )
                                        )
11           Plaintiff,                 )
                                        )        FINDINGS AND RECOMMENDATION
12                                      )        REGARDING PLAINTIFF'S SOCIAL
                                        )        SECURITY COMPLAINT
13      vs.                             )
                                        )        (Documents 23 and 28)
14   MICHAEL J. ASTRUE, Commissioner,   )
                                        )
15                                      )
           Defendant.                   )
16   _____)

17
18
19                              **BACKGROUND**

20           Plaintiff William Skelton ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying his application for disability insurance

22   benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social

23   Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted,

24   without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge, for findings

25   and recommendation to the District Court.

26
27
28                                            1

**FACTS AND PRIOR PROCEEDINGS**[1]

On July 15, 2002, Plaintiff filed an application for disability insurance benefits.[2]  AR 79-82. He alleged disability since June 30, 1998, due to hepatitis C, pulmonary fibrosis, trigger finger, diabetes, high blood pressure, lower back pain, foot swelling and pain, and weak spells.  AR 79-81, 91.  After being denied both initially and upon reconsideration for both SSI and disability insurance benefits, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 47, 56, 62-65, 67-71, 72.  On January 29, 2004, ALJ Michael J. Haubner held a hearing.  AR 270-302.  On July 16, 2004, ALJ Haubner held a supplemental hearing.  AR 303-311.  ALJ Haubner denied Plaintiff's disability insurance benefits on September 7, 2004.  AR 10-23.  On November 29, 2005, the Appeals Council denied review.  AR 5-7.

Hearing Testimony

_____ *Hearing of January 29, 2004*

_____ On January 29, 2004, ALJ Haubner held a hearing in Fresno, California.  AR 270-302. Plaintiff appeared with his attorney, Jeffrey Milam.  AR 272.  Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 272, 287-291, 297-299, 301-302.

Plaintiff was born on March 12, 1951.  AR 277.  He completed the eleventh grade, but did not get a GED or other high school equivalency certificate.  AR 277.  He did not have any formalized education or vocational training.  AR 277.

Plaintiff testified that he worked as a mill helper processing cottonseed for cottonseed oil. AR 277.  He operated machinery, pushing buttons.  AR 278.  He had to lift and carry fifty to one hundred pounds for approximately four hours during an eight-hour-day.  AR 278.  Plaintiff also worked as a parts puller for an auto wrecking company.  AR 278.  He has not had any other jobs in the last 15 years.  AR 278.  He last worked on June 30, 1998.  AR 278.  He did not work in 1999. AR 279.  He stopped working in 1998 because the plant closed.  AR 279.

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2]Records regarding Plaintiff's application for SSI were not included in the record before the Court.

2

1    Plaintiff testified that he has troubles breathing, but does not take any medication for it.  AR

2  279.  He last took medication for it in 1996.  AR 279.  He smokes four cigarettes a day.  AR 279.  He

3  has been at that level for about a year.  AR 279.  Prior to that, he smoked approximately "a pack a

4  day."  AR 279.  He was at the one-pack-a-day level for approximately 20 years.  AR 280.

5    Plaintiff testified that he drinks alcohol one or two days out of the week.  AR 280.  He drinks

6  between two and three beers.  AR 280.  He only drinks beer.  AR 280.  He has been drinking at that

7  level for five years.  AR 280.

8    Plaintiff has diabetes and takes medications for it.  AR 280-281.  He is supposed to follow a

9  special diet for diabetes, which he follows "[p]robably 50% of the time."  AR 281.  He tests his own

10  blood sugar every day.  AR 281.

11    Plaintiff testified that he lives with his wife and youngest son.  AR 281.  His son is seventeen.

12  AR 281.  His wife works and his son is in school.  AR 281-282.

13    Plaintiff is right-handed.  AR 281.  He dresses himself, picks up his own knife and fork to

14  eat, shaves and showers himself.  AR 282.  He has a driver's license without restrictions.  AR 282.

15  On average, he drives a couple of times a week.  AR 282.  He usually goes to the grocery store or to

16  a doctor's appointment.  AR 282.  He probably goes shopping or to the market once a week.  AR

17  282.  He probably goes out to eat once a month.  AR 282-283.  He does not go to church or to any

18  clubs or groups.  AR 283.

19    Plaintiff lives in a house with no stairs.  AR 283.  He does not mow the lawn.  AR 283.  He

20  last mowed the lawn a year before the hearing.  AR 283.  He will water his yard and his flowers

21  about three times a week.  AR 283.  He does not weed the flower bed or plant the flowers.  AR 283.

22  He cooks or prepares meals three times a week.  AR 283-284.  He also does simple meal preparation

23  a couple of times a day.  AR 284.  He cleans up after himself or does dishes two times a day.  AR

24  284.  He has a washer and dryer at home and does laundry three times a week.  AR 284.  He folds the

25  laundry.  AR 284.  He uses both hands to drive.  AR 284.  He has an automatic, four-wheel-drive

26  SUV.  AR 284.

27    Plaintiff testified that his stroke, his back, his diabetes and the complications from them keep

28                                                3

him from working full time. AR 285.  He does not remember breaking a finger or which hand it was on. AR 285.  He has problems with his left arm and left hand since his stroke.  AR 285.  He does not have problems gripping or grasping with the right hand.  AR 285.  He can lift no more than five pounds with his left hand.  AR 285-286.  He does not remember having surgery on his right fourth finger a couple of years ago.  AR 286.  He thought he could lift and carry fifteen pounds with both hands because of his back.  AR 286.  He thought he could be on his feet approximately five minutes before he would have to sit down.  AR 286.  He sits or lies down most of the day.  AR 286.  He can sit approximately thirty or thirty-five minutes at one time.  AR 286.  On average, he lies down one time a day for three to four hours because of pain in his back.  AR 287.

VE Thomas Dachelet also testified in response to questions from the ALJ.  AR 287.  The VE identified Plaintiff's past relevant work as medium physical demand, unskilled per DOT.  AR 288.  As performed, both jobs are unskilled, heavy.  AR 288.

The ALJ asked the VE to assume a person of the same age, education, language and work experience as Plaintiff.  AR 288.  This person could lift and carry 20 pounds a third of the day and ten pounds for half of the day.  AR 288.  The VE testified there would be no past relevant work.  AR 288.  Without any further restrictions, there would be other work in the world of light and sedentary, unskilled work.  AR 288.  Examples are cashier and assembler.  AR 289.  For the cashier in California, there would be 94,341 jobs at the light level and 15,724 jobs at the sedentary level.  AR 289.  Approximate US figures would be multiplied by 10.  AR 290.  For assembler in California, there would 52,512 jobs at the light level and 11,011 jobs at the sedentary level.  AR 290.  Another example is hand packers and packagers with 25,783 jobs at the light level and 905 at the sedentary level.  AR 290.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently and should avoid concentrated fumes, odors, dust, gases, etc.  AR 290.  The VE testified there would be no past relevant work, but there would be other work.  AR 290.  The other work would be the same as that for the first hypothetical.  AR 290-291.

4

1    For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry

2  five pounds with the left upper extremity, 15 pounds with both hands, could be on their feet five

3  minutes at a time, could sit 30 to 35 minutes at a time and must take one unscheduled three to four

4  hour break a day.  AR 291.  The VE testified that there would be no past relevant work or other

5  work.  AR 291.

6    Plaintiff also testified in response to questions from his legal counsel.  AR 291.  Plaintiff

7  testified that he has a hard time grasping with his left hand.  AR 291.  He did not think he could

8  grasp eight hours a day.  AR 292.  He did not know how much of a day he would be able to grasp if

9  he was able to take some breaks throughout the day.  AR 292.  If he grasps his medicine with his left

10  hand, he drops medicine.  AR 292.  He has dropped dishes.  AR 292.  The longest he is able to do

11  dishes if five minutes.  AR 292.  He has to rest approximately ten minutes before starting again.  AR

12  292.

13    When asked for an explanation as to why he did not remember having surgery, Plaintiff

14  testified that since his stroke, he has had a lot of memory loss.  AR 293.  He remembers that he had

15  surgery in his hand for his finger.  AR 293.  He got full use of his hand approximately eight months

16  after surgery.  AR 294.  He started driving approximately three weeks after surgery.  AR 294.

17    Plaintiff testified that he would have trouble using either hand to do an eight-hour-a-day job

18  as an assembler because of his memory problem.  AR 295.  He could assemble all day long if he

19  could use only his right hand.  AR 295.

20    Plaintiff testified that his hepatitis does not cause him any additional symptoms.  AR 295.  He

21  testified that the medications he takes cause him at least two hours of drowsiness and he takes it two

22  times a day.  AR 295-296.  He talked with his doctor about it.  AR 295.  The doctor said it "comes

23  with the medicine."  AR 295.

24    Plaintiff testified that he constantly has low back pain.  AR 296.  It constantly is aching and

25  sometimes is "breathtaking."  AR 296.  It goes down both his legs.  AR 296.  Besides taking

26  medications, Plaintiff rests a lot and uses heat on his back once or twice a day for approximately an

27  hour.  AR 296.

28

1    Plaintiff testified that the diabetes causes him symptoms like nausea, which might be once a

2    day or once a week.  AR 297.  He has no other symptoms from the diabetes.  AR 297.

3    The VE also testified in response to questions from Plaintiff's counsel.  AR 297.  The VE

4    testified that the assembler job and hand packager job would be ruled out if there was only one hand

5    available, but the cashier work would remain.  AR 297-298.  The cashier job has occasional use of

6    both hands, and requires two hands for only one third of the day.  AR 299.  The VE testified that the

7    dominant hand is going to take care of the bulk of the work.  AR 299.

8    In response to questions from the ALJ, Plaintiff testified that the last time he looked for full-

9    time work "would have been a little over two years" prior to the hearing.  AR 300.   He is hepatitis C

10   positive.  AR 301.

11   *Hearing of July 16, 2004*

12   On July 16, 2004, ALJ Haubner held a supplemental hearing in Fresno, California.  AR 303-

13   311.  Plaintiff appeared with his attorney, Jeffrey Milam.  AR 305.  Vocational expert ("VE") Cheryl

14   Chandler also appeared and testified.  AR 306-307, 308-310.

15   The VE testified that Plaintiff's past relevant work as a parts puller was heavy per the DOT

16   and heavy as performed, semi-skilled.  AR 306.  Plaintiff's past relevant work as a mill worker was

17   medium per the DOT and heavy as performed.  AR 306.  Skills obtained in past relevant work would

18   be use of tools and knowledge of automobile parts to medium levels.  AR 307.

19   For hypothetical number five[3], the ALJ asked the VE to assume a person who could lift and

20   carry no greater than 10 pounds frequently and occasionally, is restricted from fingering or grasping

21   with the non-dominant left hand, is restricted from activities involving overhead reaching, could

22   walk no greater than 4 hours out of 8, must avoid climbing and balancing, occasionally could do

23   stairs, ramps or uneven terrain, occasionally could stoop, kneel, crouch and crawl and may be

24   restricted in safety awareness, but who has an unrestricted driver's license and drives several times a

25   week.  AR 307-308.  The ALJ also asked the VE to assume a hypothetical person of the same age,

26

27       [3]The ALJ indicated that he asked hypotheticals one (1) through four (4) at the last hearing.  AR 307.

28                                                    6

1   educational, language and work experience background as the Plaintiff.  AR 308.  The VE testified

2   that past relevant work would be precluded.  AR 308-309.  The VE also testified that with the upper

3   extremities at sedentary, it would eliminate other jobs.  AR 309.

4          For hypothetical six, the ALJ asked the VE to assume a person who could lift less than 10

5   pounds occasionally, up to 10 pounds occasionally, less than 10 pounds frequently, could stand/walk

6   at least 2 hours out of 8, is limited in pushing and pulling of the non-dominant left hand, should

7   never climb, should never balance, occasionally could kneel, crouch, crawl and stoop and is limited

8   in reaching, gross handling, fingering and feeling in the left upper extremity.  AR 310.  This person

9   could not do past relevant work or any other work as it generally appears.  AR 310.

10          Medical Evidence

11          On April 19, 1994, a CT of Plaintiff's chest was consistent with an interstitial infiltrative

12   process.  AR 255.

13          On April 28, 2994, William C. Pitts, M.D., a pathologist, diagnosed Plaintiff with mild

14   interstitial fibrosis and mild inflammation of the right lower lobe of his lung.  AR 254.

15          On November 4, 1996, Mazhar Javaid, M.D., of Madera Pulmonary Diagnostic and

16   Treatment Center, prepared correspondence to Anderson Clayton Corporation.  AR 250.  Dr. Javaid

17   indicated that Plaintiff had been under his medical care since March 1994 for interstitial fibrosis and

18   hyperreactive disease.  AR 250.  Dr. Javaid opined that Plaintiff's condition was stable and he was

19   advised to resume work.  AR 250.  Dr. Javaid also advised that Plaintiff not work in dusty areas or

20   places with extreme changes of temperature and he should avoid exposure to chemicals.  AR 250.

21          On August 25, 1999, Plaintiff sought treatment from Youssef Hadweh, M.D., for complaints

22   of dizziness, head congestion and eye pain.  AR 172.  Plaintiff was diagnosed with sinusitis,

23   hypertension and hypercholesterolemia.  AR 172.

24          On September 3, 1999, Plaintiff again sought treatment from Dr. Hadweh.  AR 168.  Plaintiff

25   reported drinking alcohol daily.  AR 168.

26          On September 8, 1999, Plaintiff underwent an abdominal sonogram.  AR 167.  Steven K.

27   Hansen, M.D., a radiologist, opined that Plaintiff had borderline hepatomagely and increased

28                                              7

parenchymal echo pattern of the liver.  AR 167.

On September 22, 1999, Plaintiff saw Dr. Hadweh and was diagnosed with hypertension, hepatitis C and an enlarged liver.  AR 166.  Dr. Hadweh explained to Plaintiff that he needed stop alcohol, including beer. AR 166.

On August 8, 2000, Dr. Hansen reviewed PA and lateral chest views of Plaintiff.  AR 164.  Dr. Hansen indicated that there was degenerative change of the thoracic spine.  AR 164.  He concluded "[c]hronic findings...[n]o acute process." AR 164.

On September 20, 2000, Plaintiff sought treatment for back pain.  AR 161.  He was prescribed Vicodin.  AR 161.  He also received an intramuscular injection in his left deltoid.  AR 161.

On October 28, 1999, Plaintiff sought treatment for Amritpal Pannu, M.D. at Central Valley Medical Group after falling from his truck.  AR 213.  Plaintiff complained that his right hand hurt.  AR 213.  Dr. Pannu diagnosed Plaintiff with a right hand injury.  AR 213.  X-rays revealed a small metal foreign body in the ring finger, mild degenerative change, but no evidence of fracture.  AR 212.

On April 30, 2001, Plaintiff sought treatment for complaints of chest pain and numbness in his left arm.  AR 159.  On May 4, 2001, Plaintiff sought follow-up treatment for chest pain.  AR 156.

On December 10, 2001, Plaintiff underwent a neurological evaluation by Asela P. Jumao-as, M.D.  AR 137-139.  Plaintiff complained of "spells: nausea, bodily warmth, lightheaded w/o loss of consciousness," which lasts approximately 3-5 minutes and is followed by tiredness.  AR 139.  A system review showed leg cramps, chest pain, shortness of breath, poor hearing, dizziness, poor memory and numbness.  AR 138.  Dr. Jumao-as' impression was "R/O simple partial seizures."  AR 137.  An EEG, a brain MRI and other tests were recommended.  AR 137.

On December 31, 2001, Plaintiff underwent an EEG.  AR 134.  His awake EEG was normal and a sleep recording did not show activation of epileptiform abnormalities.  AR 134.

On March 18, 2002, Plaintiff saw Dr. Jumao-as for a neurology follow-up.  AR 132.  Plaintiff complained of a rising sensation in the abdomen and chest with nausea lasting five minutes.  AR

132.  Dr. Jumao-as diagnosed him with simple partial seizures and hypertension.  AR 132.  He was prescribed Dilantin and placed on a 24-hour Holter monitor.  AR 132.

On March 20, 2002, Plaintiff sought treatment for complaints of pain in his upper back.  AR 147.  He was assessed with back pain.  AR 147.

On April 1, 2002, Dr. Jumao-as completed a neurology consultation.  AR 130.  Plaintiff complained of "spells" with no loss of consciousness.  AR 130.  Dr. Jumao-as diagnosed Plaintiff with simple partial seizures and an abnormal "GTT."  AR 130.  Plaintiff refused to take Dilantin.  AR 130.  He was advised to decrease caffeine intake and not to drive.  AR 130.

On April 2, 2002, Plaintiff requested a check for diabetes.  AR 1146.  The provider prescribed glucophage and recommended diet, weight loss and exercise.  AR 146.

On May 8, 2002, Plaintiff sought treatment from Anne Grover, PA-C, of the Chowchilla Hospital Clinic.  AR 209.   PA-C Grover reported that Plaintiff had returned to the clinic after a 2 ½ year absence because he wished to continue medications that his current provider did not wish to continue.  AR 209.  Plaintiff wanted to continue Glucophage.  AR 209.  He indicated that prior to starting Glucophage, he was having 2-3 episodes of dizziness, but now felt great.  AR 209.  PA-C Grover related Plaintiff's medical history to include smoking for 25-30 years (at least 1 ½ pack cigarettes daily) and drinking beer two to three times a week (3-5 beers).  AR 209.

On examination, Plaintiff was alert, obese and in no acute distress.  AR 209.  An EKG was normal.  AR 210.  His cholesterol HDL ration put him at above average risk, but his liver function tests were well within normal.  AR 210.  PA-C Grover assessed Plaintiff with type 2 diabetes or a pre-type 2 diabetes condition, positive hepatitis C and hypertension.  AR 210.  PA-C Grover reportedly advised Plaintiff to quit smoking and drinking alcohol.  AR 210.  She also discussed that he was at significant risk of heart attack or stroke.  AR 210.

On June 19, 2002, Plaintiff sought treatment from PA-C Grover for his diabetes and for complaints of losing feeling in his fingers.  AR 205.  He reported that his Glucophage was making him very tired and he had tingling and numbness in the middle and ring fingers of his right hand.  AR 205.  On examination, Plaintiff was alert and in no distress.  AR 205.  PA-C Grover assessed

1  Plaintiff with diabetes syndrome and reduced his Glucophage.  AR 206.  She also assessed him with

2  hyperlipidemia, paraesthesia in both hands, right trigger finger and nicotine dependency.  AR 206.

3       On June 25, 2002, Mark T. Hellner, M.D., conducted an orthopaedic evaluation of Plaintiff.

4  AR 182.  Dr. Hellner indicated that Plaintiff had development of stenosing tenosynovitis involving

5  his right fourth finger and his left third and fourth fingers.  AR 182.  Plaintiff had some "mild pulling

6  with minimal catching in the left hand, but significant catching and locking in the right hand."  AR

7  182.  Plaintiff received a corticosteroid injection in the region of the right fourth finger and was

8  prescribed Bextra.  AR 182.

9       On July 3, 2002, Plaintiff sought a recheck with PA-C Grover regarding reduction of his

10  Glucophage because of fatigue.  AR 204.  Plaintiff complained he has "spells" on reduced

11  Glucophage, with deep fatigue.  AR 204.  On examination, Plaintiff was alert, obese and in no

12  distress.  AR 204.  PA-C Grover assessed Plaintiff with type 2 diabetes, with "spells."  AR 204.

13       On July 19, 2002, Plaintiff was admitted to Mercy Surgical & Diagnostic Center for surgical

14  release of stenosing tenosynovitis of the right fourth finger by Dr. Hellner.  AR 177-179.  Dr. Hellner

15  indicated that Plaintiff had stenosing enosynovitis involving the right fourth finger.  AR 177.

16  Plaintiff had limited motion, pain, discomfort and no relief from injections.  AR 177.

17       On October 25, 2002, Chinnapa R. Nareddy, M.D., completed an internal medicine

18  evaluation of Plaintiff.  AR 184-189.  Plaintiff complained of diabetes mellitus, hypertension, low

19  back pain, right shoulder pain, hepatitis C, pulmonary fibrosis and smoking.  AR 184.  On physical

20  examination, Plaintiff was an "obese male in no acute distress."  AR 186.  He complained of

21  tenderness in the lower lumbar spine and severe pain with straight leg raising.  AR 187.  He had

22  straight leg raising to 60 degrees on the left and 70 degrees on the right and paralumbosacral

23  muscular spasm.  AR 187.  Plaintiff also had normal range of motion in his shoulders and wrists,

24  although he complained of right shoulder tenderness and bilateral wriest tenderness.  AR 187.

25  Plaintiff's right hand grip was 3/5 and left was 4-5/5.  AR 187.

26       Dr. Nareddy's diagnostic impression of Plaintiff included long-standing diabetes mellitus-

27  presently stable, hypertension, chronic low back pain most likely disk space disease versus

28                                             10

musculoskeletal, history of hepatitis C without sequela of portal hypertension, history of pulmonary fibrosis, chronic tobaccoism, history of right shoulder pain secondary to most likely bursitis and right hand pain secondary to status post surgery.  AR 188.  Dr. Nareddy opined that Plaintiff could lift and carry 20 pounds for one-third of an eight-hour day, 10 pounds for one-half of an eight hour day, walk six hours with normal rest periods and had unrestricted standing and unrestricted sitting.  AR 189.

On November 12, 2002, Cicely Roberts, M.D., reviewed PA and lateral views of Plaintiff's chests.  AR 194.  Dr. Roberts concluded that the results were negative with no evidence of pulmonary fibrosis.  AR 194.

On December 2, 2002, a state agency medical consultant completed a Physical Residual Functional Capacity Assessment form.  AR 221-228.  The consultant opined that Plaintiff occasionally could lift and/or carry 20 pounds, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and could sit about 6 hours in an 8-hour workday.  AR 222.  Plaintiff's capacity to push and/or pull was limited in upper extremities.  AR 222.  He did not have postural limitations.  AR 223.  He had limited handling and fingering with occasional grasping or twisting with his right hand.  AR 224.  He did not have visual or communicative limitations.  AR 224-225.  He had to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  AR 225.  On April 22, 2003, a state agency physician reviewed and affirmed the assessment.  AR 227.

On January 7, 2003, Plaintiff sought treatment from PA-C Grover for blood tests and complaints of pain with movement of his left elbow.  AR 203.  PA-C Grover noted that Plaintiff was "a known smoker, and he has no desire to quit" and he "also continues to drink alcohol" with "no intention of quitting."  AR 203.  On examination, Plaintiff was alert, obese, and in no distress.  AR 203.  He had left elbow lateral epicondyle tenderness.  AR 203.  He also had hyperlipidemia and known positive hepatitis C.  AR 203.  An EKG administered by PA-C Grover was normal.  AR 203,

On January 7, 2003, Mark A. Wagner, D.O., a radiologist, reviewed three views of Plaintiff's left elbow.  AR 201.  Dr. Wagner opined that Plaintiff had mild chronic change and no acute process.  AR 201.

On January 13, 2003, x-rays of Plaintiff's lumbosacral spine revealed degenerative disk

1  changes in the mid to lower lumbar spine.  The abdominal aorta was calcified, but not narrowed or

2  dilated.  AR 219.  He was diagnosed with chronic lower back pain.  AR 220.

3      On January 14, 2003, PA-C Grover opined that Plaintiff's lipid profile had significant

4  abnormalities and an X-ray of his left elbow revealed mild degenerative disease.  AR 199-200.  PA-

5  C Grover assessed Plaintiff with significant and multiple risk factors for coronary artery disease and

6  continued Bextra for his left elbow.  AR 199.

7      On January 20, 2003, Plaintiff sought follow-up treatment for lower back pain.  AR 218.

8      On February 17, 2003, Plaintiff was assessed with COPD.  AR 238.

9      On February 26, 2003, Plaintiff underwent an MRI of the lumbar spine.  AR 253.  The MRI

10  revealed moderate multilevel degenerative changes including slight loss of normal lumbar lordosis.

11  AR 253.  Plaintiff also had small disc bulges at multiple levels, which were combined with extensive

12  facet arthropathy and some mild spinal stenosis especially at L3-4 and L4-5.  AR 253.

13      On March 4, 2003, Mazhar Javaid, M.D., of Madera Pulmonary and Sleep Disorders Center,

14  Inc., completed a pulmonary evaluation of Plaintiff.  AR 248-249.  Dr. Javaid described Plaintiff to

15  have a history of interstitial lung disease, silicosis, obstructive airway disease, polycythemia,

16  hyperlipidemia, hypertension and hepatitis-C.  AR 248.  The evaluation was prompted by

17  progressively worsening dyspnea.  AR 248.  He gets breathless when he tries to do something and

18  has coughing and wheezing at night.  AR 248.

19      On review of his systems, Plaintiff was positive for fatigue, occasional night sweats, some

20  blurring of vision, occasional ringing in the ears and dizziness on exertion.  AR 249.  Dr. Javaid

21  assessed Plaintiff with interstitial lung disease, possibly silicate dust exposure in the past, chronic

22  obstructive pulmonary disease, obstructive sleep apnea with snoring, observed apneas, gasping and

23  choking, hypertensive cardiovascular disease, polycythemia by history, hepatitis-C, diabetes and

24  hypercholesterolemia.  AR 249.  Dr. Javaid started Plaintiff on Combivent and recommended a

25  ventilatory study and polysomnographic sleep study.  AR 249.  Dr. Javaid advised Plaintiff to stop

26  smoking and reduce weight.  AR 249.

27      On March 6, 2003, Plaintiff underwent a pulmonary function study.  AR 246.  The study

28                                          12

1   showed mild restrictive defect with no response to inhaled bronchodilators.  AR 246.  Flow volume

2   loop showed obstructive pattern.  AR 246.

3     On March 17, 2003, Plaintiff sought medical treatment for the results of his pulmonary

4   function study.  AR 242.  He reported that he needed paper work filled out for disability (permanent).

5   AR 242.

6     On June 27, 2003, Plaintiff sought treatment at the Chowchilla Hospital Clinic for complaints

7   of left arm weakness with numbness and left face pain.  AR 235.  Plaintiff complained that he was

8   unable to stop spasms on his left arm for two days.  AR 235.  He reportedly awoke with constant

9   movement in his left arm.  AR 235.  On examination, Plaintiff had constant rhythmic movement in

10  his left arm.  His blood pressure was 200/100, and he had weakness in his left arm and left leg.  AR

11  235.

12    On August 7, 2003, Plaintiff saw PA-C Grover for a recheck.  AR 234.  Plaintiff reported

13  seeing a neurologist who felt he had a stroke.  AR 234.  Plaintiff indicated that overall he "feels very

14  good."  AR 234.  About once a day, he feels tired and anxious.  AR 234.  He takes a Valium and

15  feels better.  AR 234.  On examination, he was alert and in no distress.  AR 234.  He moved with

16  ease and had no defect noted in the left extremity.  AR 234.  PA-C Grover assessed him with

17  hypertension and status post right CVA.  AR 234.  She increased his Lotensin and refilled his

18  Dilantin, Glucophage, and Valium.  AR 234.

19    On September 2, 2003, Plaintiff saw Diana J. Hylton, M.D. for a neurological evaluation.

20  AR 240-241.  Plaintiff reported that he woke up on June 27, 2003, and found his arm uncontrollably

21  twitching.  AR 240.  The following day it started to do a lot of "flapping around" and he was seen in

22  the emergency room.  AR 240.  A CT scan of his brain was normal.  AR 240.  Since the episode,

23  Plaintiff reported occasional headaches and that his left leg tires easily.  AR 240.

24    On physical examination, Plaintiff was alert and oriented with normal cranial nerves.  AR

25  240.  He had mild weakness in the left arm.  AR 240.  Dr. Hylton opined that plaintiff's history was

26  consistent with a basal ganglia infarct probably on the basis of small vessel disease.  AR 240.  Dr.

27  Hylton noted that Plaintiff had high blood pressure and diabetes mellitus, which put him "at risk for

28              13

this type of stroke." AR 240. Dr. Hylton explained that Plaintiff should taper off the Dilantin. AR 241. On a follow up visit, the Dilantin had been stopped with no problems. AR 241. Dr. Hylton opined that Plaintiff must control his blood pressure. AR 241. She started Plaintiff on Depakote for continued headaches, which she deduced "as probably a vascular type." AR 241. If the Depakote worked, the plan was to stop it in December. AR 242.

On September 30, 2003, Plaintiff reported that his headaches were less severe, but occurring daily. AR 257. His Depakote prescription was increased. AR 257.

On December 19, 2003, Plaintiff sought treatment for back pain. AR 258. He was prescribed Vicodin. AR 258.

On January 21, 2004, Plaintiff sought medical treatment for headaches. AR 256. Plaintiff ran out of Depakote and his headaches were back and severe. AR 256. On examination, Plaintiff had a very slight tremor in his left hand. AR 256. He was restarted on Depakote and another medication. AR 256.

On March 26, 2004, Juliane Tran, M.D., a board certified physical medicine and rehabilitation physician, completed a comprehensive neurological evaluation of Plaintiff. AR 259-263. Plaintiff complained of back pain and stroke. AR 259. Dr. Tran reviewed Plaintiff's lumbar spine x-ray from January 14, 2003, along with evaluation notes by Dr. Hylton from September 2003. AR 259. Plaintiff explained that he had back pain for more than two years. AR 259. The back pain is worse with prolonged walking and sitting. AR 259. Plaintiff denied any therapy, injections or surgery for the pain. AR 259. He indicated the pain varied from 3/10 to 10/10 in intensity. AR 259. Plaintiff also reported a stroke in June 2003. AR 259. He asserted that he still had a tremor in the left arm and hand, along with weakness. AR 260. Plaintiff reported that he could do some house chores and dishes, but could not do vacuuming, mopping, cooking or yard work. AR 260.

Dr. Tran recorded Plaintiff's current medications to include Plavix, Hydrocodone, Verapamil, Lotensin, Glucophage, Diazepam and Nortriptyline. AR 260. His past medical history included hypertension and diabetes. AR 260.

On physical examination, Plaintiff was able to sit comfortably during the exam and get on

14

1    and off the exam table without difficulty or assistance.  AR 260.  He was alert and oriented and could

2    answer questions and follow commands without difficulty.  AR 260.  Plaintiff's blood pressure was

3    193/108.  Dr. Tran informed Plaintiff of his severe high blood pressure and risk of stroke.  AR 260.

4    She advised him to see his primary care physician as soon as possible.  AR 260.

5    On examination of his gait, Plaintiff was unable to perform toe-walk, heel-walk, or tandem-

6    walk secondary to significant decrease in balance.  AR 261.  On review of his motor strength,

7    Plaintiff's grasping strength in the left hand was 4+ to 5-/5 and in his right hand was 5/5.  AR 262.

8    Dr. Tran diagnosed Plaintiff as status post stroke in the basal ganglia region.  AR 262.

9    Plaintiff had "evidence of weakness in the left arm proximally and distally" and abnormal,

10    involuntary movement consistent with stroke.  AR 262.  Dr. Tran also diagnosed Plaintiff with back

11    pain, "most likely from lumbar disk disease with degenerative joint disease."  AR 262.  Plaintiff had

12    tenderness to palpation over the lumbar spine and decreased range of lumbar motion.  AR 262.

13    Based upon the examination, Dr. Tran opined that Plaintiff would be restricted with any

14    activities involving climbing, balancing, or working at heights.  AR 262.  She opined that he also

15    would be restricted in activities involving lifting more than 10 pounds occasionally or 10 pounds

16    frequently and restricted with activities involving fingering or grasping with the left hand or

17    involving overhead reaching.  AR 262.  He also would be restricted in activities "involving

18    prolonged standing or walking more than four hours," in activities involving frequent negotiating of

19    stairs, ramps, or uneven terrain on a frequent, but not occasional, basis and in activities involving

20    frequent stooping, kneeling or crouching.  AR 263.  He had no restrictions with sitting, vision or the

21    environment.  AR 263.  Dr. Tran further opined that Plaintiff had a mild decrease in abstract

22    thoughts and judgment and may be restricted in activities involving intact safety awareness.  AR 263.

23    He could handle his own funds and drive if he could pass the driving test.  AR 263.

24    On March 26, 2004, Dr. Tran completed a Medical Source Statement of Ability to Do Work-

25    Related Activities (Physical) form.  AR 264-267.  Dr. Tran opined that Plaintiff occasionally could

26    lift and/or carry 10 pounds and less than 10 pounds and frequently could lift and/or carry less than 10

27    pounds.  AR 264.  He could stand and/or walk at least 2 hours in an 8-hour workday.  AR 265.  His

28

1   sitting was not affected by the impairment.  AR 265.  His pushing and/or pulling was affected by the

2   impairment.  AR 265.  Dr. Tran opined that he had significant, decreased strength/grasp in left hand

3   and abnormal involuntary movement in the left hand.  AR 265.  He could never climb ramps, stairs,

4   a ladder, a rope or a scaffold.  AR 265.  He could never balance.  AR 265.  He occasionally could

5   kneel, crouch, crawl and stoop.  AR 265.  Dr. Tran explained that Plaintiff had decreased "gait,

6   balance w/ gait testing."  AR 265.  He also had limited reaching all directions (including overhead),

7   limited handling (gross manipulation), limited fingering (fine manipulation) and limited feeling (skin

8   receptors).  AR 266.  He occasionally could reach, handle, finger and feel.  AR 266.  He did not have

9   visual or communicative limitations, but did have limitations with hazards (machinery, heights).  AR

10  267.

11      ALJ's Findings

12          The ALJ determined that Plaintiff met the nondisability requirements for a Period of

13  Disability and Disability Insurance Benefits and was last insured for benefits on September 30, 2002.

14  AR 27.  The ALJ also determined that Plaintiff had not engaged in substantial gainful activity since

15  June 27, 2003, the established onset date.  AR 27.   The ALJ found that Plaintiff had severe

16  impairments of status post June 2003 stroke, chronic obstructive pulmonary disease, hepatitis C, a

17  history of alcohol abuse, a history of diabetes mellitus-Type II, mild lumbar spine degenerative disc

18  disease and status post right fourth finger surgery.  AR 27.  The ALJ concluded that Plaintiff's

19  impairments or combination of impairments did not meet or medically equal one of the listed

20  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 28.

21          The ALJ also concluded that Plaintiff's allegations of an inability to perform more than

22  sedentary work were credible and supported by medical evidence since June 27, 2003.  AR 28.  The

23  ALJ found that, since June 27, 2003, Plaintiff had the residual functional capacity to perform

24  sedentary work (lifting and carrying 10 pounds, standing and/or walking at least two hours in an

25  eight-hour day).  AR 28.  Plaintiff was precluded from climbing and balancing and more than

26  occasional kneeling, crouching, crawling or stooping.  AR 28.  He also had manipulative restrictions

27  involving the left non-dominant hand due to residuals from a stroke.  AR 28.  The ALJ further found

28

1  that prior to June 27, 2003, Plaintiff retained the residual functional capacity to engage in light

2  exertion (lifting and carrying 20 pounds occasionally and 10 pounds frequently).  He also had to

3  avoid concentrated fumes, odors, dusts, gases, etc.  AR 28.  Therefore, the ALJ concluded that

4  Plaintiff was not able to perform his past relevant medium to heavy work.  AR 28.  Using Medical-

5  Vocational Rule 201.10 as a framework, the ALJ found that Plaintiff was disabled since June 27,

6  2003.  AR 28.  Using Medical-Vocational Rules 202.18 (prior to Plaintiff turning age 50) and 202.11

7  (after Plaintiff turned 50) as a framework, the ALJ further found that Plaintiff was not disabled prior

8  to June 27, 2003.  AR 28.

### SCOPE OF REVIEW

10       Congress has provided a limited scope of judicial review of the Commissioner's decision to

11  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the

12  Court must determine whether the decision of the Commissioner is supported by substantial

13  evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla, *Richardson v.*

14  *Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d

15  1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

16  adequate to support a conclusion."  *Richardson*, 402 U.S. at 401 (internal quotation marks and

17  citation omitted).  The record as a whole must be considered, weighing both the evidence that

18  supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760

19  F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner

20  must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir.

21  1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if

22  the Commissioner applied the correct legal standards, and if the Commissioner's findings are

23  supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509,

24  510 (9th Cir. 1987).

### REVIEW

26       In order to qualify for benefits, a claimant must establish that he is unable to engage in

27  substantial gainful activity due to a medically determinable physical or mental impairment which has

28                                                    17

1  lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

2  1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity

3  that he is not only unable to do his previous work, but cannot, considering his age, education, and

4  work experience, engage in any other kind of substantial gainful work which exists in the national

5  economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the

6  claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

7        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

8  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R.

9  §§ 404.1520 (a)-(g), 416.920 (a)-(g) (2004).  Applying the evaluation process in this case, the ALJ

10  found that Plaintiff (1) has not engaged in substantial gainful activity since the established onset date

11  of June 27, 2003; (2) has an impairment or a combination of impairments that is considered "severe"

12  (status post June 2003 stroke, chronic obstructive pulmonary disease, hepatitis C, a history of alcohol

13  abuse, a history of diabetes mellitus-Type II, mild lumbar spine degenerative disc disease and status

14  post right fourth finger surgery) based on the requirements in the Regulations (20 C.F.R. §§

15  404.1520(c), 416.920(c) (2004)); (3) does not have an impairment that meets or equals one of the

16  impairments set forth in Appendix 1 to Subpart P of Part 404; (4) is unable to perform his past

17  relevant work; and, (5) a finding of disabled is directed by the Medical-Vocational Rules since June

18  27, 2003, but not prior to that date.  AR 27-28.

19        In this case, Plaintiff contends that the ALJ's rationale is inconsistent with substantial

20  evidence.  Specifically, Plaintiff argues that the ALJ (1) improperly determined that Plaintiff was not

21  disabled prior to June 27, 2003; and (2) improperly evaluated Plaintiff's credibility.

22                              **DISCUSSION**

23  A.    Substantial Evidence

24        1.    Plaintiff's Onset Date

25        Plaintiff appears to argue that the ALJ improperly determined that he was not disabled prior

26  to June 27, 2003, including prior to his date last insured ("DLI") of September 30, 2002.  To support

27  his argument, Plaintiff first alleges the ALJ failed to properly review the medical evidence.

28                                    18

1  Plaintiff's Opening Brief ("POB"), at p. 5.  Plaintiff contends that the ALJ failed to review the

2  evidence as a whole and failed "to review multiple impairments, including the trigger family, hand

3  paresthesis, COPD, left elbow arthritis, and more."  POB, at p. 5.

4         Plaintiff correctly states that when a claimant suffers from multiple impairments, the

5  Commissioner must consider their combined effect without regard to whether any such impairment,

6  if considered separately, would be of sufficient medical severity, in determining whether the claimant

7  is disabled.  *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir.1988), *Sprague v. Bowen*, 812 F.2d 1226,

8  1231 (9th Cir. 1987).   However, Plaintiff bears the burden of proving that he is disabled.  *Meanel v.*

9  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if his

10  impairments are severe and meet the durational requirement of twelve months.  20 C.F.R. §§

11  404.1505, 404.1520(a).  A severe impairment is one that significantly limits the physical or mental

12  ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  The mere diagnosis of an

13  impairment is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549

14  (9th Cir. 1985).

15         Here, the ALJ determined that prior to June 27, 2003, Plaintiff retained the residual

16  functional capacity to engage in light exertion (lifting and carrying 20 pounds occasionally and 10

17  pounds frequently).  He also had to avoid concentrated fumes, odors, dusts, gases, etc.  AR 25.  In

18  reaching the RFC, the ALJ indicated that he considered the opinion of board certified consultative

19  examiner, Dr. Nareddy, because Plaintiff's treating physicians did not provide residual functional

20  assessments.  AR 25.

21         Dr. Nareddy evaluated Plaintiff in October 2002, which was prior to the onset date

22  determined by the ALJ.  In evaluating Plaintiff, Dr. Nareddy reviewed all available medical records

23  before the evaluation.  AR 184.  Dr. Nareddy acknowledged Plaintiff's diagnoses, including long-

24  standing diabetes mellitus-presently stable, hypertension, chronic low back pain most likely disk

25  space disease, history of hepatitis C without sequela of portal hypertension, history of pulmonary

26  fibrosis, chronic "tobaccoism," history of right shoulder pain secondary to "most likely bursitis" and

27  right hand pain secondary to status post surgery.  AR 188.

28

1    Based on a physical examination and a review of Plaintiff's medical history, Dr. Nareddy

2    opined that Plaintiff could lift and carry 20 pounds for one-third of an eight-hour day, 10 pounds for

3    one-half of an eight hour day.  AR 189.  Plaintiff could walk six hours with normal rest periods and

4    had no restrictions on standing or sitting.  AR 189. Dr. Nareddy's functional assessment was

5    consistent with the ALJ's determination that Plaintiff could lift and carry 20 pounds occasionally and

6    10 pounds frequently.  A consultative examiner's opinion may constitute substantial evidence

7    because it is based on the examiner's independent findings and observations.  *Tonapetyan v. Haler,*

8    *242 F.3d 1144, 1149 (9th Cir. 2001)*.

9    In addition to the opinion of Dr. Nareddy, the ALJ also gave weight to the opinion of the state

10   agency medical consultant regarding pulmonary limitations.  AR 25.  Reports of the nonexamining

11   advisor need not be discounted and may serve as substantial evidence when they are supported by

12   other evidence in the record and are consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th

13   Cir. 1995).  In December 2002, prior to the onset date determined by the ALJ, the state agency

14   medical consultant opined that Plaintiff had to avoid concentrated exposure to fumes, odors, dusts,

15   gases, poor ventilation, etc.  AR 225.  The ALJ found this restriction consistent with other evidence

16   in the record.  AR 25.  The record reflects that Plaintiff had moderate chronic obstructive pulmonary

17   disease.  AR 190-191.  Plaintiff's contention that the ALJ failed to consider his COPD is without

18   merit.

19   Although the ALJ credited the environmental restrictions of the state agency medical

20   consultant, the ALJ rejected that portion of the state agency consultant's opinion regarding Plaintiff's

21   right hand restrictions because the examining physician gave no hand restrictions and claimant

22   testified that he had no restriction with his right hand.  AR 25.  The ALJ need not believe everything

23   a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes v.*

24   *Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989).  Further, the record does not demonstrate that

25   Plaintiff had right hand restrictions or complaints following the surgery on his finger.  In January

26   2004, Plaintiff himself testified he did not have problems gripping or grasping with the right hand.

27   AR 285.  He also testified that he had full use of his hand approximately eight months after surgery.

28

1    AR 285.  Accordingly Plaintiff's argument that the ALJ did not consider his trigger finger is without

2    merit.

3         The ALJ's RFC of a person who could lift and carry 20 pounds occasionally, 10 pounds

4    frequently and who must avoid concentrated fumes, odors, dust, gases, etc. is supported by the

5    record.  The VE testified that there was work for such an individual.  AR 290-291.

6         As stated, Plaintiff challenges the onset date by arguing that the ALJ did not consider a

7    number of his impairments.  First, Plaintiff alleges that the ALJ did not consider his left elbow

8    arthritis, citing left elbow x-rays.  However, the x-rays cited by Plaintiff showed only "mild spurring"

9    of the left elbow.  AR 210.  Additionally, Plaintiff himself testified that he had problems with his left

10   arm and hand only since his stroke (AR 285), which is the onset date determined by the ALJ.

11        Second, Plaintiff asserts that the ALJ erred by filing to mention his obesity in the decision.

12   Social Security Regulation ("SSR") 02-1p provides that obesity is considered a severe impairment

13   "when, alone or in combination with another medically determinable physical or mental

14   impairment(s), it significantly limits an individual's physical or mental ability to do basic work

15   activities."  The record, however, does not indicate that Plaintiff's obesity limits his functioning.  Dr.

16   Nareddy, who examined Plaintiff and noted he was an "obese male," did not identify any functional

17   limitations based on Plaintiff's obesity.  Plaintiff's citation to the assessment of PA-C Grover that

18   Plaintiff was obese and Plaintiff's reference to the March 26, 2004, assessment completed by Dr.

19   Tran are not instructive as they did not address any limitations due to obesity.  Moreover, Plaintiff

20   did not present any testimony or other evidence at his hearings that his obesity impaired his ability to

21   work.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (ALJ did not commit reversible error by

22   not considering obesity throughout the sequential evaluation process where claimant failed to point

23   to any evidence of limitations due to obesity).

24        Third, Plaintiff contends that the ALJ failed to consider his diabetes.  Plaintiff's contention is

25   without merit.  The ALJ expressly acknowledged that Plaintiff had a history of diabetes mellitus-

26   Type II, which the ALJ determined was a "severe" impairment.  AR 25.  The record also reflects that

27   in 2002, Dr. Nareddy opined that Plaintiff's long-standing diabetes mellitus was stable.  AR 188.

28

1   Further, at the hearing in 2004, Plaintiff testified that his diabetes only caused him nausea once a day

2   or once a week.  AR 297.  He denied any other symptoms from his diabetes.  AR 297.

3        Finally, Plaintiff asserts that the ALJ failed to consider his "significant disc disease."  To

4   support his argument, Plaintiff cites the opinion of Dr. Root, a radiologist.  AR 219.  Plaintiff's

5   assertion is unsupported by evidence of Dr. Root's findings.  Dr. Root identified only "mild disk

6   space narrowing."  AR 219.

7        Accordingly, Plaintiff's arguments regarding his alleged onset date are without merit.

8        2.    Application of Grid Rule

9        Plaintiff contends that the ALJ utilized the wrong birthday in reaching his determination of

10  whether or not Plaintiff was disabled prior to his DLI of September 30, 2002.  The Commissioner

11  concedes that the ALJ mistakenly used June 27, 2003, as Plaintiff's date of birth and applied the

12  wrong section of the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2

13  ("Grids").  The ALJ applied Grid Rule 202.18 to determine that Plaintiff was not disabled prior to

14  June 27, 2003.  AR 27.  Based on the ALJ's RFC finding for light work prior to June 27, 2003, and

15  the Appellant's age, the ALJ should have used Grid Rule 202.11.  Under Grid Rule 202.11, Plaintiff

16  also would have been determined "not disabled."  Therefore, the ALJ's application of a different

17  Grid Rule is harmless error.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir.

18  2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate

19  conclusion).

20       3.    Credibility

21       Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility.  The ALJ is

22  required to make specific findings assessing the credibility of Plaintiff's subjective complaints.

23  *Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991).  In rejecting the

24  complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence

25  undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

26  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of his

27  pain and impairments is unreliable, "the ALJ must make a credibility determination with findings

28                                        22

1    sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

2    claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

3        "The ALJ may consider at least the following factors when weighing the claimant's

4    credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony

5    or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work record, and

6    testimony from physicians and third parties concerning the nature, severity, and effect of the

7    symptoms of which [claimant] complains." *Id.* at 958-959 (citing *Light v. Soc. Sec. Admin.,* 119

8    F.3d 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence

9    in the record, we may not engage in second-guessing." *Id.* at 959.

10        Here, the ALJ made specific findings in assessing Plaintiff's credibility.  First, the ALJ

11   considered Plaintiff's work history in rejecting Plaintiff's contention that he was disabled since June

12   1998.  The ALJ noted Plaintiff's testimony that he stopped work in June 1998 due to a plant closing

13   and not due to his impairments as alleged.  AR 26.  In addition, the ALJ considered Plaintiff's

14   testimony that he looked for full-time work until about two years prior to the hearing, which

15   demonstrated that he was not totally disabled.  AR 26.  As noted, consideration of a claimant's work

16   record is an appropriate factor when weighing credibility.  *Id.* at 959.

17        The ALJ also considered Plaintiff's inconsistencies regarding his smoking habit.  AR 26.  An

18   ALJ may properly consider inconsistencies in a claimant's testimony.  *Id.*  With regard to Plaintiff's

19   smoking, the ALJ cited Plaintiff's testimony that he smoked four cigarettes per day for the past year

20   and one pack per day for 20 years.  AR 26, 279.  However, Plaintiff reported smoking ten cigarettes

21   per day to the consultative examiner in 2002 and one and one half packs a day for 25-30 years to the

22   physician's assistant in 2002.  AR 279.

23        The ALJ also pointed out inconsistencies between Plaintiff's testimony and various

24   statements regarding his drinking.  With regard to Plaintiff's alcohol consumption, the ALJ

25   considered Plaintiff's testimony that for the previous five years he drank only one to two times a

26   week, two to three beers each time.  AR 26, 280.  However, Plaintiff reported drinking beer daily in

27   September 1999.  AR 166.  In 2002, he reported drinking 3-5 beers two to three times a week and

28                                                           23

was advised to quit.  AR 209.  This evidence in the record supports the ALJ's conclusion regarding

Plaintiff's credibility.  *See*, *e.g.*, *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ

properly relied on inconsistent statements regarding drinking to reject claimant's testimony).

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and

against Plaintiff William Skelton.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii

pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served

with these findings and recommendations, the parties may file written objections with the court.  The

document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

   **Dated:   April 1, 2008          /s/ Gary S. Austin**
                          UNITED STATES MAGISTRATE JUDGE